**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| STREETSENSE, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 8:24-cv-00347-LKG |
| v. | ) ) | Dated:  March 6, 2026 |
| EPHANT GROUP, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

In this breach-of-contract action, the Plaintiffs, Streetsense, LLC ("Streetsense") and Streetsense Consulting, LLC ("Streetsense Consulting"), bring breach of contract claims against the Defendants, Ephant Group, Inc. ("Ephant Group") and Ephant Group – Allegory, LLC ("Ephant Allegory"), arising from the Defendants' alleged failure to pay certain compensation owed to the Plaintiffs for providing interior design services.  *See generally* ECF No. 1.  The Plaintiffs have filed a motion for reconsideration of the Court's June 12, 2025, memorandum opinion and order denying their renewed motion for default judgment, pursuant to Fed. R. Civ. P. 59(e) and 60(b).  ECF No. 21.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS** the Plaintiffs' motion for reconsideration (ECF No. 21) and (2) **GRANTS** the Plaintiffs' renewed motion for default judgment (ECF No. 17).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

In this breach-of-contract action, the Plaintiffs bring breach of contract claims against the Defendants, arising from the Defendants' alleged failure to pay certain compensation owed to the

---

[1] The facts recited in this memorandum opinion are derived from the complaint, the Plaintiffs' renewed motion for default judgment, and the exhibits attached thereto.  ECF Nos. 1, 17, 17-1, 17-2, 17-3, 17-4, 17-5, 17-6, 17-7, 17-8, 17-9, 17-10 and 17-11.

1

Plaintiffs for providing interior design services.  *See generally* ECF No. 1.  In the complaint, the Plaintiffs assert breach of contract claims against Ephant Group in Counts I, II and IV of the complaint and a breach of contract claim against Ephant Allegory in Count III of the complaint. *Id*. at ¶¶ 65-84.  As relief, the Plaintiffs seek to recover monetary damages, attorneys' fees and costs from the Defendants.  ECF No. 17 at 16-17; *see* ECF No. 17-1 at 1-2.

Background

Plaintiff Streetsense is a limited liability company organized under the laws of Maryland, with its principal place of business located in Washington, DC.  ECF No. 1 at ¶ 8.

Plaintiff Streetsense Consulting is a limited liability company organized under the laws of Maryland, with its principal place of business located in Washington, DC.  *Id*. at ¶ 9.

Defendant Ephant Group is a corporation organized under the laws of Tennessee, with its principal place of business located in Knoxville, Tennessee.  *Id*. at ¶ 10.

Defendant Ephant Allegory was a limited liability company organized under the laws of Tennessee, with its principal place of business located in Knoxville, Tennessee.  *Id*. at ¶ 11. Ephant Allegory was administratively dissolved on August 9, 2022.  *Id*.

As background, Streetsense is an interior design and strategy firm that develops and manages design projects for commercial and multifamily residential properties.  *Id*. at ¶ 2.  The Plaintiffs allege in the complaint that, between on or about May 16, 2021, and February 10, 2022, they entered into four contracts with the Defendants, pursuant to which Streetsense agreed to provide certain interior design services for certain properties owned by the Defendants.  *Id*. at ¶¶ 16, 28, 44 and 56.

The Hope Brothers Restaurant Agreement

First, the Plaintiffs allege that, on or about May 2021, an affiliate of Ephant Group purchased a building located at 428 South Gay Street in Knoxville, Tennessee (the "Hope Brothers Building") and that Ephant Group planned to convert this building into a small boutique hotel with a restaurant on the ground floor.  *Id.* at ¶ 15.  The Plaintiffs also allege that, on or about May 16, 2021, Streetsense and Ephant Group entered into a contract (the "Hope Brothers Agreement"), pursuant to which Streetsense would provide Ephant Group with certain interior design services for the Hope Brothers Building.  *Id*. at ¶¶ 16-18; *see* ECF No. 17-2.

To support this claim, the Plaintiffs have provided the Court with a document entitled "The Hope Brothers Restaurant, Proposal for Interior Architecture Services/Ephant Group." ECF No. 17-2. This document contains a scope of work provision that describes the base scope of work to be performed by Streetsense as follows: "Dining, Bar, Restrooms, BOH and associated support spaces." *Id.* at 10. The Hope Brothers Agreement also contains a proposed budget and schedule, which sets forth the proposed schedule and fees for the work to be performed under this agreement and provides, in relevant part, that:

> *It is Streetsense's policy to require a nonrefundable retainer deposit at the commencement of each project. All invoices must be brought current prior to Streetsense commencing any new phases or issuing digital files. The Retainer Deposit for this project is 20% of the Base Scope of Services.*

*Id.* at 19 (emphasis in original).

The Hope Brothers Agreement also contains a provision entitled "Agreement," which provides that:

> If you approve the above proposal and the following Terms and Conditions, please sign below and return for our record and as your authorization to proceed. This signed proposal, and a retainer outlined on the proposed schedule and budget will serve as our formal agreement.

*Id.* at 20. In addition, the Agreement provision in the Hope Brothers Agreement provides that:

> The general terms and conditions outlined below (the "Terms and Conditions") are part of the attached Proposal and are hereby incorporated by reference. The proposal and these Terms and Conditions are collectively referred to her as the "Agreement"). Client's acceptance of the Proposal constitutes Client's acceptance of the following Terms and Conditions.

*Id.*

The Terms and Conditions for the Hope Brothers Agreement address, among other things: (1) the fees for the services outlined in the proposal; (2) the hourly rate schedule; (3) payments; (4) indemnification; (5) place of work and safety health and (6) the resolution of disputes. *Id.* at 27-31. Lastly, the Hope Brothers Agreement is signed by Hardikkumar Patel on behalf of Ephant Group, but Streetsense did not sign the agreement. *Id.* at 20.

3

The Plaintiffs allege that, pursuant to the Hope Brothers Agreement, the parties agreed that Streetsense would develop the Hope Brothers restaurant's general aesthetic, floor plans and ceiling plans, and provide direction as to what materials and finishes Ephant Group should use in the restaurant to match this aesthetic vision. ECF No. 1 at ¶ 18; *see* ECF No. 17-2 at 10 and 12-16. The Plaintiffs also allege that Ephant Group executed an addendum to this agreement on or about September 22, 2021. ECF No. 1 at ¶ 19; *see* ECF No. 17-3. And so, the Plaintiffs allege that the parties contractually agreed that Streetsense would also (1) develop a logo for the restaurant; (2) design templates for the restaurant's menus, coasters and merchandise; and (3) design the restaurant's interior signs. ECF No. 1 at ¶ 20; *see* ECF No. 17-3 at 1-2.

The Plaintiffs contend that Ephant Group failed to compensate them for services provided under the Hope Brothers Agreement. ECF No. 1 at ¶ 27. In this regard, the Plaintiffs allege that they submitted an invoice to Ephant Group for $10,500.00, for certain services rendered for the design of the restaurant's interior signage, on December 19, 2022. *Id*. at ¶ 26; *see* ECF No. 17-4. The Plaintiffs further contend that Ephant Group has failed to pay this invoice. ECF No. 1 at ¶ 27; *see* ECF No. 17-4. And so, the Plaintiffs contend that Ephant Group breached the Hope Brothers Agreement by failing to pay Streetsense $10,500.00 for certain services rendered. ECF No. 1 at ¶ 69.

The Hope Brothers Hotel Agreement

Second, the Plaintiffs allege that, on or about May 16, 2021, Streetsense and Ephant Group entered into a second contract related to the Hope Brothers Building (the "Hope Brothers Hotel Agreement"), pursuant to which Streetsense agreed to provide interior design services for a boutique hotel to be located in the Hope Brothers Building. *Id*. at ¶ 28; *see* ECF No. 17-5. In this regard, the Plaintiffs allege that the parties agreed that that Streetsense would develop the hotel's overall aesthetic and layout, and provide direction as to what furniture, fixtures and equipment ("FF&E") to use to match the hotel's aesthetic. ECF No. 1 at ¶ 32.

The Hope Brothers Hotel Agreement contains an Agreement provision and Terms and Conditions that are identical to the provisions in the Hope Brothers Restaurant Agreement. ECF No. 17-5 at 20 and 27-31. The Hope Brothers Hotel Agreement is also signed by HD Patel, on behalf of Ephant Group, and Streetsense did not sign this agreement. ECF No. 1 at ¶ 29; *see* ECF No. 17-5 at 20.

4

The Plaintiffs allege that, pursuant to the Hope Brothers Hotel Agreement, the parties agreed that Streetsense would complete construction administration services, by "assist[ing] in design reviews of submittals and shop drawings relative to FF&E and other items in [Streetsense's] scope [of work], as well as answer[ing] Requests for Information transmitted to [Streetsense] through the [architect of record] as they relate[d] to [Streetsense's] scope of work." ECF No. 1 at ¶ 34; *see* ECF No. 17-5 at 17. In this regard, the Plaintiffs allege that the fee for construction administration services for the Hope Building Hotel Agreement was quoted on a "not to exceed" basis (the "CA Cap"). ECF No. 1 at ¶ 34; *see* ECF No. 17-5 at 19. And so, the Plaintiffs further allege that the parties agreed that, upon reaching the CA Cap, Streetsense would charge Ephant Group for all construction administration services on an hourly basis. ECF No. 1 at ¶ 34.

The Plaintiffs allege that Streetsense notified Ephant Group that the CA Cap had been reached on July 11, 2022. *Id.* at ¶ 40; *see* ECF No. 17-6. But, the Plaintiffs allege that Ephant Group did not respond to, or acknowledge, this notification. ECF No. 1 at ¶ 40. Given this, the Plaintiffs allege that Streetsense began billing Ephant Group for construction administration services upon an hourly basis. *Id.* at ¶ 40. And so, the Plaintiffs allege that Streetsense submitted the following invoices to Ephant Group for work performed under the Hope Building Hotel Agreement: (1) an invoice dated December 13, 2022, in the amount of $1,100.00; (2) an invoice dated January 18, 2023, in the amount of $975.00; (3) an invoice dated February 17, 2023, in the amount of $600.00; (4) an invoice dated March 17, 2023, in the amount of $750.00; and (5) an invoice dated April 19, 2023, in the amount of $262.50. ECF No. 1 at ¶ 41; *see* ECF No. 17-7.

The Plaintiffs contend that Ephant Group also failed to pay these invoices. ECF No. 1 at ¶ 42. And so, the Plaintiffs also contend that Ephant Group owes Streetsense $3,687.50 for services rendered for the Hope Brothers Building hotel. *Id*. at ¶ 42.

<u>The Gatlinburg Property Agreement</u>

Third, the Plaintiffs allege that, on or about June 22, 2021, Streetsense and Ephant Allegory entered into a contract, under which Streetsense would provide interior design services for a property located at 937 Parkway in Gatlinburg, Tennessee (the "Gatlinburg Property Agreement"). *Id*. at ¶¶ 43-44. The Plaintiffs also allege that, pursuant to this agreement, the parties agreed that Streetsense would simultaneously work on two projects related to the subject

5

property: (1) the design of the overall hotel and rooftop bar and (2) the design of a model hotel guest room. *Id*. at ¶ 46. In addition, the Plaintiffs allege that the parties agreed that Streetsense would be responsible for schematic design, design development and design intent documents. *Id*. Plaintiffs further allege that the parties agreed to the recovery of certain reimbursable expenses at a rate of cost, plus a 10% administrative charge. *Id*. at ¶ 47.

The Gatlinburg Property Agreement contains an Agreement provision and Terms and Conditions that are identical to the provisions in the Hope Brothers Restaurant and Hope Brothers Hotel Agreements. ECF No. 17-8 at 21 and 28-33. The Gatlinburg Property Agreement is also signed by HD Patel on behalf of Ephant Allegory and Streetsense did not sign this agreement. *Id*. at 21.

The Plaintiffs allege that they submitted the following invoices to Ephant Allegory for work performed under the Gatlinburg Property Agreement: (1) an invoice dated November 15, 2022, in the amount of $31,440.70; (2) an invoice dated December 19, 2022, in the amount of $12,700.00; (3) an invoice dated January 19, 2023, in the amount of $34,100.00; and (4) an invoice dated February 13, 2023, in the amount of $63,440.31. ECF No. 1 at ¶¶ 52-54; *see* ECF No. 17-9. The Plaintiffs contend that Ephant Allegory failed to pay these invoices. ECF No. 1 at ¶ 55. And so, the Plaintiffs also contend that Ephant Allegory owes Streetsense $141,681.01 for services rendered under the Gatlinburg Property Agreement. *Id*.

The Conley Square Agreement

Lastly, the Plaintiffs allege that, Streetsense and Ephant Group entered into a fourth contract (the "Conley Square Agreement"), on or about February 10, 2022, pursuant to which Streetsense agreed to design a logo for a property known as Conley Square Condominiums Complex, which is located in Knoxville, Tennessee. *Id*. at ¶ 56; *see* ECF No. 17-10. Plaintiffs also allege that the parties agreed that Streetsense would design the Conley Square Condominium Complex's logo, present the logo to Ephant Group, incorporate Ephant Group's feedback and deliver the final files to Ephant, pursuant to this agreement. ECF No. 1 at ¶ 62. In addition, the Plaintiffs allege that the parties agreed that Streetsense would issue two invoices to Ephant Group for these services: one invoice upon execution of the contract and one invoice upon completion of Streetsense's scope of work. *Id*. at ¶ 58.

The Conley Square Agreement contains an Agreement provision that is identical to the provisions in the Hope Brothers Restaurant, Hope Brothers Hotel and Gatlinburg Property

Agreements. ECF No. 17-10 at 7 and 12-20. The Conley Square Agreement also contains Terms and Condition that address, among other things: (1) the fees for work performed; (2) reimbursable expenses; (3) payments; and (4) indemnification and resolution of disputes that are similar to the Terms and Conditions contained in the Hope Brothers Restaurant, Hope Brothers Hotel and Gatlinburg Property Agreements. *Id*. at 12-20. The Conley Square Agreement is also signed by HD Patel on behalf of Ephant Group and Streetsense did not sign this agreement. ECF No. 1 at ¶ 57; *see* ECF No. 17-10 at 7.

The Plaintiffs allege that they submitted an invoice to Ephant Group dated November 14, 2022, in the amount of $3,750.00, pursuant to the Conley Square Agreement. ECF No. 1 at ¶ 63; *see* ECF No. 17-11. The Plaintiffs contend that Ephant Group failed to pay this invoice ECF No. 1 at ¶ 64. And so, Plaintiffs also contend that Ephant Group owes Streetsense $3,750.00 for services rendered under the Conley Square Agreement. ECF No. 1 at ¶ 64.

<u>The Plaintiffs' Allegations</u>

The Plaintiffs allege that the aforementioned four agreements are valid and binding contracts with the Defendants. ECF No. 1 at ¶¶ 66, 71, 76 and 81. The Plaintiffs also allege that the Terms and Conditions for these agreements require that Streetsense would deliver invoices to the Defendants as work progressed under the agreements and that these invoices were payable upon receipt. *Id*. at ¶¶ 21, 35, 48 and 58.

The Plaintiffs also allege that each invoice for work performed under the agreements notified the Defendants that a 1.5% per month late charge and an 18% true annual rate would be added to any balances that remained unpaid more than 30 days after the invoice date. *Id*.; *see* ECF Nos. 17-2 at 27, 17-5 at 27, 17-8 at 28 and 17-10 at 12. In addition, the Plaintiffs allege that their alleged contracts with the Defendants provided that: (1) any portion of an invoice not disputed by the Defendants in writing within ten days of receipt would be deemed final and binding; (2) the Plaintiffs had the right to suspend or terminate performance if any invoice went unpaid by the Defendants for more than 60 days; and (3) if any portion of an invoice remained unpaid after 90 days, the Plaintiffs had the right to terminate the contract, with the Defendants responsible for all costs of collection, including reasonable attorneys' fees. ECF No. 1 at ¶¶ 23, 37, 50 and 60; *see* ECF Nos. 17-2 at 26-27, 17-5 at 26-27, 17-8 at 27-28 and 17-10 at 8.

Given this, the Plaintiffs contend that the Defendants have breached the Hope Building Restaurant Agreement, Hope Building Hotel Agreement, Gatlinburg Property Agreement and

7

Conley Square Agreement.  ECF No. 1 at ¶¶ 69, 74, 79 and 84.  And so, the Plaintiffs seek to recover, among other things, the unpaid compensation that they maintain is owed under these agreements, plus their attorneys' fees and costs.  ECF No. 1 at ¶ 7.

The June 12, 2025, Decision

On June 12, 2025, the Court issued a memorandum opinion and order denying the Plaintiffs' renewed motion for default judgment (the "June 12, 2025, Decision").  ECF Nos. 18 and 19.   In the June 12, 2025, Decision, the Court held that the factual record before the Court was insufficient to establish that the Plaintiffs entered into valid and enforceable contracts with the Defendants, to support the Plaintiffs' breach of contract claims in this case.  *Id*.  Specifically, the Court held that the factual record in this case was not sufficient to establish that the Plaintiffs entered into valid and enforceable contracts with the Defendants to provide interior design services, because: (1) none of the agreements provided the by Plaintiffs are signed by representatives of the Plaintiffs; (2) the Plaintiffs failed to show that the Defendants accepted any of the agreements at issue, because there was no evidence before the Court to how, whether, and when the Defendants paid the retainers called for by these agreements; and (3) the plain language of the "Proposed Scheduler + Budget" provision in several of the agreements made clear that further bargaining between the parties would occur before these agreements were finalized.  *Id*.  And so, the Court denied the Plaintiffs' renewed motion for default judgment.  *Id*.

**B. Procedural History**

The Plaintiffs commenced this matter on February 2, 2024.  ECF No. 1.  The summons and complaint were properly served on the Defendants on March 14, 2024.  ECF Nos. 9 and 10.  But the Defendants have neither answered, nor otherwise responded to, the complaint.  ECF No. 11 at 1; ECF No. 15 at 1 and 3.  And so, the Plaintiffs filed a motion for Clerk's entry of default on May 23, 2024.  ECF No. 11.

On June 18, 2024, the Clerk of the Court entered an Order of Default against the Defendants.  ECF Nos. 12, 13 and 14.  The Defendants have not responded to the Order of Default.  *See* Dkt.

On July 24, 2024, the Plaintiffs filed a motion for default judgment, pursuant to Fed. R. Civ. P. 55(b).  ECF No. 15.  On January 15, 2025, the Court denied the Plaintiffs' motion for

default judgment without prejudice, due to insufficient evidence to show that the parties entered into valid and binding contracts.  ECF No. 16.

The Plaintiffs filed a renewed motion for default judgment against the Defendants on January 27, 2025.  ECF No. 17.  On June 12, 2025, the Court issued a memorandum opinion and order denying the Plaintiffs' renewed motion for summary judgment.  ECF Nos. 18 and 19.

On July 10, 2025, the Plaintiffs filed a motion for reconsideration and request for a hearing, pursuant to Fed. R. Civ. P. 59(e) and 60(b).  ECF No. 21.

The Court resolves the pending motion for reconsideration.

## III.    LEGAL STANDARDS

### A.  Motions For Reconsideration

Pursuant to Fed. R. Civ. P. 59(e), the Court may alter or amend a judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.  *See Wickersham v. Ford Motor Co*., 997 F.3d 526, 538 (4th Cir. 2021).  In addition, Fed. R. Civ. P. 60(b) sets forth the grounds for obtaining relief from a judgment or order.  *See* Fed. R. Civ. P. 60(b).  In this regard, Rule 60(b) provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

*Id.*

The United States Court of Appeals for the Fourth Circuit has recognized that a party seeking relief from judgment under Rule 60(b) must have a meritorious claim or defense, and the opposing party must not be unfairly prejudiced by having the judgment set aside.  *See Aikens v.*

*Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (citing *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993)).  The Fourth Circuit has also recognized that relief under Rule 60(b) is "an extraordinary remedy that should not be awarded except under exceptional circumstances." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (citing *Ackermann v. United States*, 340 U.S. 193, 202 (1950)).

### B.  Default Judgment

Fed. R. Civ. P. 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).  Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).  In deciding whether to grant a default judgment, the Court takes as true the well-pled factual allegations of the complaint, other than those pertaining to damages.  *See, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *Trs. of Nat'l Elec. Benefit Fund v. Eckardt Elec. Co.*, No. 23-1459, 2024 WL 473805, at *2 (D. Md. Feb. 7, 2024); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  In this regard, the Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context.  *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011).  And so, where a petition avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment.  *Russell v. Railey*, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (citation omitted); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of facts that 'show' why those conclusions are warranted.").

10

### C. Breach Of Contract

Lastly, "[u]nder Maryland law, the formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Montage Furniture Servs., LLC v. Regency Furniture, Inc.*, 966 F. Supp. 2d 519, 524 (D. Md. 2013) (internal citation and quotations omitted).  To state a claim for breach of contract under Maryland law, a plaintiff must establish: (1) that the defendant owed the plaintiff a contractual obligation and (2) that the defendant breached that obligation.  *See, e.g.*, *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 550 (D. Md. 2021), *aff'd* 2022 WL 17985700 (4th Cir. Dec. 29, 2022); *Allstate Ins. Co. v. Warns*, No. 11-1846, 2012 WL 681792, at \*10 (D. Md. Feb. 29, 2012) (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)).  And so, a plaintiff must plead that there existed a "contractual obligation, breach, and damages" to state a plausible breach of contract claim.  *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. 16-3431, 2018 WL 1471682, at \*17 (D. Md. Mar. 23, 2018) (citations omitted).

## IV.    ANALYSIS

The Plaintiffs have moved for reconsideration of the Court's June 12, 2025, Decision denying their renewed motion for default judgment.  ECF No. 21.  The Plaintiffs argue that the Court should reconsider the June 12, 2025, Decision, to correct a clear error of law and to prevent manifest injustice to the Plaintiffs, because: (1) they have alleged and proven mutual assent to the agreements at issue; (2) the absence of proof of a retainer payment does not defeat contract formation; and (3) the agreements are not incomplete, because they reference potential revisions to the timeline.  *Id*. at 4-13.  And so, the Plaintiffs request that the Court: (1) reconsider the June 12, 2025, Decision; (2) enter a default judgment in this matter against the Defendants; (3) award them $159,619.00 in unpaid compensation, pursuant to the parties' contractual agreements; and (4) award them $55,823.00 in pre-judgment interest and attorneys' fees.  *Id*. at 13; ECF No. 21-12.  For the reasons that follow, the Court is satisfied that reconsideration of this matter is appropriate under Fed. R. Civ. P. 59(e). The Court is also satisfied that the additional evidence and arguments presented by the Plaintiffs show that the Plaintiffs entered into valid and enforceable contracts with the Defendants.  A careful reading of the complaint also shows that the Plaintiffs have alleged facts to show that the Defendants materially breached these contracts and to support the Plaintiffs' claim for damages.  ECF No. 1 at ¶¶ 4-6 and 15-64.

11

The litigation history for the case also makes clear that the Defendants have failed to answer the complaint, or to otherwise defend this action.  For these reasons, the Court: (1) GRANTS the Plaintiffs' motion for reconsideration (ECF No. 21) and (2) GRANTS the Plaintiffs' renewed motion for default judgment (ECF No. 17).

### A.  The Plaintiffs Have Shown Mutual Assent To Enter Into The Agreements

As an initial matter, the Plaintiffs persuasively argue that they have established mutual assent of the parties to enter into the four agreements at issue in this case.  As the Court previously observed, the formation of a contract under Maryland law requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.  *Montage Furniture Servs., LLC v. Regency Furniture, Inc.*, 966 F. Supp. 2d 519, 524 (D. Md. 2013).  In this case, the plain language of the four agreements at issue shows that the Defendants would create a binding agreement by signing and returning the Plaintiffs' proposals for interior design services.  Notably, the agreements provide that:

> If you approve the above proposal and the following Terms and Conditions, please sign below and return for our record and as your authorization to proceed. This signed proposal, and a retainer outlined on the proposed schedule and budget will serve as our formal agreement.

*See* ECF Nos. 21-2 at 20, 21-5 at 20, 21-8 at 21 and 21-10 at 7.  The agreements also provide that "the [Defendants'] acceptance of the Proposal constitutes [the Defendants'] acceptance of the following Terms and Conditions" for these agreements.  *Id*.  And so, as the Court previously held, the complaint and the factual record in this case show that the Defendants signed each of the proposals offered by the Plaintiffs, and that the Defendants could accept the proposals by signing and returning the agreements to the Plaintiffs.  ECF No. 18 at 11.

In this regard, the Plaintiffs correctly observe that contract formation may occur in Maryland under circumstances where only the Defendants sign the agreements at issue here, because the Defendants' signature constitutes their acceptance of the proposals under the terms of the agreements.  *See Porter v. Gen. Boiler Casing Co*., 396 A.2d 1090, 1095 (Md. Ct. Spec. App. 1979) (holding that "the making of a valid contract requires . . .  no signatures unless the parties have made them necessary at the time they expressed their assent and as a condition modifying that assent.").  Given this, the Court is now satisfied that the Plaintiffs were not

required to counter-sign the agreements to create a valid and enforceable contract with the Defendants.

The factual allegations in the complaint also make clear that the Plaintiffs performed their obligations under the four agreements after the Defendants executed these agreements and that the Defendants accepted the Plaintiffs' interior design services. ECF No. 1 at ¶¶ 15-64; *see also, e.g.*, *Porter*, 396 A.2d at 1095; *All State Home Mortg., Inc. v. Daniel*, 977 A.2d 438, 447 (2009) (holding that a signature is not required to form a contract unless the terms of the contract make a signature a condition precedent to formation.). And so, the Plaintiffs have shown that the parties mutually agreed to the terms contained in the four agreements.

**B. The Lack Of A Retainer Payment Does Not Defeat Contract Formation**

The Plaintiffs have also shown that the Defendants' payment of a retainer was not a condition precedent to creating a valid and binding contract in this case. In Maryland, "[n]o contractual duty arises when there is an unfulfilled condition precedent to a contract." *Pradhan v. Maisel*, 338 A.2d 905, 909 (1975). "A condition precedent is an event, other than mere lapse of time, which, unless excused, must exist or occur before the duty of immediate performance of a promise arises." *Ritz–Craft Corp. v. Stanford Management Group,* 800 F. Supp. 1312, 1317 n.4 (D. Md. 1992); *see also Miller v. Bristol-Myers Squibb Co*., 121 F. Supp. 2d 831, 840 (D. Md. 2000). And so, a condition precedent may affect when performance is due, or whether a party's obligations are triggered, but it does not govern whether a contract was accepted or formed unless the condition precedent was explicitly tied to formation itself. *See, e.g.*, *All State Home Mortg., Inc.*, 977 A.2d at 447.

Here, the four agreements provide that:

> If you approve the above proposal and the following Terms and Conditions, please sign below and return for our record and as your authorization to proceed. This signed proposal, and a retainer outlined on the proposed schedule and budget will serve as our formal agreement.

ECF Nos. 17-2 at 20; 17-5 at 20; 17-8 at 21; and 17-10 at 9. The Plaintiffs argue that the language above, regarding "the retainer outlined on the proposed schedule," is "a term to be performed after the agreements were executed." ECF No. 21 at 9. In this regard, the Plaintiffs explain that the payment of the retainer is an element of the four proposals, rather than a condition precedent to creating a contract. *Id*.

13

Given the Plaintiffs' clarification about the retainer provision, the Court is now satisfied that the Defendants' apparent failure to pay a retainer did not preclude the parties from forming a contract in this case. And so, the Court agrees that the absence of evidence showing that the Defendants paid a retainer does not defeat the formation of a contract.

## C.  The Revised Timelines Do Not Preclude Contract Formation

The Plaintiffs have also explained that language contained in some of the proposals, providing that "final schedule [is] to be confirmed by Client" and that "fees are subject to change depending on final schedule," do not preclude the formation of a valid and enforceable contract in this case. *See* ECF Nos. 21-5 at 19 and 21-8 at 20. Notably, the Chief Executive Officer of Streetsense, Brian Taff, states in his sworn Affidavit that this language reflects the parties' agreement that certain details regarding the Plaintiffs' performance would be finalized at a later time, as is the customary practice in the interior design and consulting industry. ECF No. 21-1 ("Taff Affidavit") at ¶ 85. Mr. Taff also explains that the parties agreed and understood that the Plaintiffs need not take any additional steps to accept the proposals, once the Defendants signed these agreements, because the proposals state that the Defendants could accept the proposals by signing and returning the documents to the Plaintiffs. *Id*. at ¶ 87 (stating that it is customary in the interior design and consulting industry for clients to accept proposals by signing and returning them.).

Notably, Mr. Taff explains in his affidavit that the Plaintiffs provided the essential terms of their offer, with regards to the scope, fees, deliverables, and terms and conditions of the interior design services in their proposal, so that the Defendants could accept the offer upon signature. *Id*. at ¶ 87. The Taff Affidavit and the complaint also make clear that: (1) the Plaintiffs performed under the four agreements; (2) the Defendants never objected to this work; and (3) the four agreements were treated by the parties as binding and enforceable. *Id*. at ¶¶ 83, 85 and 87; ECF No. 1 at ¶¶ 15-64. And so, the Court is satisfied that the language in the agreements regarding potential changes to the schedule does not preclude the formation of a valid and enforceable contract in this case.

In sum, the complaint and the evidence before the Court shows that the four agreements at issue in this breach of contract case contain the Plaintiffs' scope of work, the payment structure, timing, and the governing terms and conditions for these agreements. The Plaintiffs have also shown that: (1) the Defendants accepted these agreements, by signing and returning them to the

14

Plaintiffs; (2) that the Plaintiffs began performance thereafter; and (3) the Defendants subsequently benefitted from the Plaintiffs' work. *Id.* at ¶¶ 8-11, 15-17, 19-26, 29-32, 38, 39, 41-47, 50-53, 59-66, 68, 71-73, 75, 78-83 and 88. Given this, the Plaintiffs have established that they entered into valid and enforceable contracts with the Defendants.

The Plaintiffs have also alleged facts in the complaint to show that the Defendants materially breached these contracts, by failing to pay the Plaintiffs for their interior design services. ECF No. 1 at ¶¶ 15-64. In addition, the Plaintiffs have shown that the amount of their damages is $159,619.00 in unpaid compensation, because of the Defendants failure to pay for these services. ECF No. 1 at ¶¶ 27, 42, 55 and 64 (alleging open invoices in the amounts of $10,500.00, $3687.50, 141,681.01 and $3,750.00, respectively). Lastly, the Plaintiff provide support for the $55,823.00 in pre-judgment interest that they seek in this case. ECF No. 17-13 (worksheet calculating pre-judgment interest on the outstanding invoices at a rate of 18% per year.). And so, the Plaintiffs have also substantiated their damages claim in this case.[2]

### D. The Plaintiffs Are Entitled To A Default Judgment

Having determined that the Plaintiffs are entitled to recover damages from the Defendants for the material breaches of the four agreements, the Court considers, as a final matter, whether entry of a default judgment against the Defendants is appropriate. Rule 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(1). And so, the Court may enter default judgment against the defendants, if the plaintiffs seek a sum certain or a sum that can be made certain by computation. Fed. R. Civ. P. 55(b)(1).

The litigation history for this case makes clear that the Defendants have failed to plead, or to otherwise defend, this civil action. The summons and complaint were properly served on the Defendants approximately two years ago, on March 14, 2024. ECF Nos. 9 and 10. But, to date, the Defendants have neither answered, nor otherwise responded to, the complaint. Given this, Plaintiffs filed a motion for Clerk's entry of default on May 23, 2024, which the Clerk granted

---

[2] The Plaintiffs also seek to recover their reasonable attorneys' fees. ECF No. 17 at 17 and 17-12.

15

on June 18, 2024.  ECF Nos. 11 and 12.  Thereafter, the Plaintiffs filed a motion for default judgment and a renewed motion for default judgment, which the Defendants have also failed to respond to.  ECF Nos. 15 and 17.  And so, entry of a default judgment against the Defendants is warranted and appropriate in this case.  Fed. R. Civ. P. 55(b).

## V.    CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** the Plaintiffs' motion for reconsideration (ECF No. 21); and

(2) **GRANTS** the Plaintiffs' renewed motion for default judgment (ECF No. 17).

A separate Order and Judgment shall issue.

 **IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

16